J-S09026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN CORNISH | : | |
| | : | |
| Appellant | : | No. 1822 EDA 2021 |

Appeal from the PCRA Order Entered August 16, 2021,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0005385-2009.

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MAY 26, 2022**

John Cornish appeals from the order denying his first timely petition filed pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§ 9541-46.  We affirm.

Cornish and his co-defendant, Malik Johnson, we involved in the shooting death of the victim.  Police uncovered several used gun cartridge casings at the scene of the crime which a ballistics expert later identified as having come from two different weapons, a 9mm or .38mm handgun and a shotgun.  No firearms, however, were recovered at the scene.

In Cornish's direct appeal, we reproduced the trial court's summary of the Commonwealth's evidence at trial:

_____

[*] Former Justice specially assigned to the Superior Court.

Police Officer James Miller testified that shortly before 11 p.m. on October 5, 2008, he was called to the area of 2900 Thomson Street in Philadelphia. He saw a gold Mercury Grand Marquis. The driver's window appeared to be shot out. A black male later identified as the [victim] was slumped over and unresponsive. He appeared to have been shot on the left side. The officer took the victim to Hahnemann Hospital where he was pronounced dead.

The Medical Examiner, Dr. Sam Guilino[,] testified that the victim died of a gunshot wound to his chest. The bullet entered the left side of his chest, and went through the left lung, the left subclavian artery and vein. The bullet then penetrated into the neck, going through the trachea, the carotid artery and the jugular vein. The bullet lodged in the right side of the neck and was recovered.

Hakee[m] Savage testified that he was inside "Ms[.] P's" house near the shooting scene when he heard gunshots. He further testified that after the gunfire stopped [Cornish and Johnson] came running into the house. One had a shotgun and one had a handgun. The witness testified that he could not remember which defendant had which weapon. He further testified that when they came in, one of the defendants said, "Don't go outside. Somebody just got shot." However, in a signed statement given to the police approximately three (3) months after the shooting . . . the witness gave a different version of events. In that statement, the witness said that right after the shooting both defendants came running into the house breathing heavily. [Johnson] was the one armed with the shotgun. [Cornish] said, "Don't go outside. We just rocked someone." The witness understood the word "rocked" to mean killed.

Karee[m] Savage was called and questioned about a statement that [Cornish] made to him after the shooting admitting to being one of the shooters. The witness denied that [Cornish] made any statement to him. The witness did acknowledge that he gave a signed statement to the police detailing the substance of that conversation. However the witness testified that he lied in his statement. In that statement [S]avage detailed a conversation he had with

[Cornish] after the shooting. [Cornish] admitted to doing the killing with another person. [Cornish] stated that the motive appeared to be one of mistaken identity, as the decedent was driving a [car] that the intended target, a person named "Mansy" was known to drive.

Darnell Corbitt testified that he was in the car with the decedent at the time of the shooting. At trial the witness testified that after stopping at a bar at 29th and Girard, he heard gunshots from more than one gun and jumped out of the car. At trial he denied having anymore information about the shooting or the shooters. However, in a signed statement given to Homicide Detective John McNamee approximately three weeks after the shooting, the witness also gave a different version of events. In that statement the witness identified photographs of both defendants as the shooters.

Dandrea Brown testified before this [c]ourt on November 4, 2010. Her testimony was preserved prior to trial, as she was suffering from ovarian cancer. She lived in the house at 2907 West Flora Street, which was used for the packaging of drugs by [Cornish], [Johnson], the Savage brothers and others. She was upstairs at the time of the shooting. She came downstairs. A few seconds after the shooting, [Cornish] and [Johnson] came running inside. [Johnson] was holding a shotgun and [Cornish] had a handgun. [Johnson] told her to clean the guns and store them. She complied.

Bullet holes were observed in the driver[']s side car door. Forensic evidence recovered from the crime scene outside the car included six (6) fired cartridge casings, three (3) bullet specimens and one (1) buckshot from a .12 gauge shotgun. No fingerprints were recovered from the crime scene, nor was a gun recovered. One additional projectile and additional bullet fragments were recovered from inside the car door.

Police Officer Stephen Ahmie, a ballistics expert[,] examined all of the ballistics evidence. The ballistic[s] evidence recovered from the car door consisted of two (2) types, 00 buckshot consistent with coming from a shotgun shell and a bullet consistent with being from a [.38 caliber or 9-millimeter weapon]. The bullet recovered from the

victim[']s neck also was consistent with a [.38 caliber or 9-millimeter weapon]. The other ballistic[s] evidence recovered at the crime scene consisted of seven (7) fired cartridge casings and one (1) fired shotgun shell. The fired cartridge casings all were [9-millimeter] and all were fired from the same gun. The fired shotgun shell was [a] .12 gauge and was consistent with . . . the buckshot recovered.

**Commonwealth v. Cornish**, 117 A.3d 356 (Pa. Super. 2014), non-precedential decision at 2-4 (citations omitted).

Following a four-day bench trial, the court convicted Cornish of third-degree murder and related charges. On May 17, 2013, the trial court sentenced him to an aggregate term of twenty-five to fifty years of imprisonment. Cornish appealed to this Court. On November 24, 2014, we affirmed his judgment of sentence. **Cornish**, **supra**. On May 13, 2015, our Supreme Court denied Cornish's petition for allowance of appeal. **Commonwealth v. Cornish**, 117 A.3d 295 (Pa. 2015).

On April 12, 2016, Cornish filed a counseled PCRA petition. The Commonwealth filed a motion to dismiss on September 1, 2017. Thereafter, the PCRA court held several evidentiary hearings between May 24, 2019, and March 19, 2021. The parties submitted post-hearing briefs. By order entered August 16, 2021, the PCRA court denied Cornish's petition. This appeal followed. The PCRA court did not require Pa.R.A.P. 1925 compliance.

Cornish raises the following five issues:

A. Did the [PCRA] court err in not finding trial counsel ineffective under the U.S. and Pennsylvania Constitutions for failing to investigate witnesses Donald Caraco, Beth Caraco and Captain Michael O'Donnell, whose testimony

- 4 -

would have credibly established that Ms. Caraco – a disinterested witness – saw the shooter alleged to be [Cornish], and her description of that shooter was utterly inconsistent with [Cornish's] physical stature and his clothing as described by [Dandrea Brown,] the immunized and incentivized Commonwealth witness?

B. Did the [PCRA] court err in not finding trial counsel ineffective under the U.S. and Pennsylvania Constitutions for failing to investigate and call Police Officer [Steven] Shippen, who would have established that two men – one of whom matched an eyewitness's description of the shooter the Commonwealth alleged was [Cornish], but who bore no resemblance to him – were seen driving away from the crime scene moments after the shooting?

C. Did the [PCRA] court err in not finding trial counsel ineffective under the U.S. and Pennsylvania Constitutions for failing to present eyewitness Elizabeth Brown, who would have testified that one of the two shooters in the incident fled in a direction away from the residence of Dandrea Brown, an immunized witness, who testified that both shooters – one of whom she claimed was [Cornish] – escaped into her home just seconds after the shooting?

D. Did the [PCRA] court err in not finding trial counsel ineffective under the U.S. and Pennsylvania Constitutions for failing to call Antionne Russell, who would have testified that: 1) he purchased the murder weapon, that was used in this case, from Kareem Savage, a Commonwealth witness who claimed that [Cornish] confessed to his involvement to him; and that 2) the weapon was silver in color, not black as Commonwealth witness Dandrea Brown claimed?

E. Did the [PCRA] court err in denying [Cornish's] claim that the cumulative impact of trial counsel's ineffectiveness prejudiced him?

Cornish's Brief at 4-5 (footnotes omitted)

This Court's standard of review for an order dismissing a PCRA petition

is to ascertain whether the order "is supported by the evidence of record and

is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Barndt***, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted). This Court "must defer to the credibility determinations made by the [PCRA] court that observed a witness's demeanor first hand." ***Commonwealth v. Todd***, 820 A.2d, 707, 712 (Pa. Super. 2003). Such deference is especially appropriate "where, as here, the PCRA court judge also served as the trial court judge." ***Martin***, 5 A.3d 177, 197 (Pa. 2010).

Cornish's issues challenge the effectiveness of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." ***Id.*** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. ***Id.*** at 533. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. ***Martin***, 5 A.3d at 183.

To establish that trial counsel was ineffective for failing to investigate and/or call a witness at trial, a PCRA petitioner must demonstrate that:

> (1) the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness's existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant.

*Commonwealth v. Hall*, 867 A.2d 619, 629 (Pa. Super. 2005) (citation omitted).

Here, the PCRA court placed Cornish's ineffectiveness claims in context:

> Cornish's petition argues [trial counsel] was remiss in failing to interview and bring to trial witnesses who claimed to have seen an alternative shooter on the scene, namely a [heavyset] man in a red sweatshirt. The testimony at the hearing[s] may be summarized as follows:
>
> Officer O'Donnell says that when he came to the scene of the crime, Beth Caraco told him that she saw a heavyset male in a sweatshirt on the southwest corner of 29th and Stiles Street and that the male was shooting a gun. Donald Caraco did not see the shooting but reported his [then] fiancé's contemporaneous observations.
>
> Officer Shippen was at or on his way to the hospital with the shooting victim when flash information came over the police radio stating that a heavyset male wearing a red shirt was in the vicinity of the shooting. He was known to [Officer] Shippen and the police as Larry McCray. McCray was the passenger in a Grand Marquis and was wearing a red hoodie. The driver was not identified.
>
> [Elizabeth] Brown said that from her second story window she saw two men at the corner of 29th and Stiles Streets shooting. After the shooting she saw them run down the street. One of them was wearing a dark hoodie.

When questioned by police, Russell identified a photo of Kareem Savage as representing someone who sold him a gun.

PCRA Court Opinion, 10/7/21, at 4-5 (formatting altered).

The PCRA court then denied Cornish's petition for post-conviction relief because she credited trial counsel's testimony as presenting a reasonable trial strategy. Alternatively, the court concluded that Cornish did not present credible testimony that would establish prejudice:[1]

Having reviewed the trial record, heard testimony at Cornish's hearing[s] and having been the presiding judge over the waiver trial in this matter, [the court] concludes that Cornish has not met his burden. [Trial counsel] described his approach: while he reviews witness statements in the district attorney's file, he generally does not interview those declarants. In his experience, witnesses who make prior statements often change or alter those statements in court, thereby requiring him to challenge them at trial, to the detriment of his client's interests. Similarly, he guards against witness testimony that, as in this case, is inconsistent with incontrovertible facts.

Under the circumstances of this case, [trial counsel's strategy] was prudent. Cornish['s] witnesses contradicted the uncontroverted physical evidence. Moreover, at times the witnesses contradicted each other. For example, [Beth Caraco's] statement that there was one shooter and that the victim fell to the ground conflicted with the forensic evidence that there were two shooters and that [the victim] was shot

---

[1] Although not addressed by the PCRA court, we note that Cornish presented little evidence that the named witnesses were available and willing to testify at trial. For example, he summarily argues Beth Caraco was available to testify at trial because she testified at the PCRA hearing. **See** Cornish's Brief at 30. Our reading of her testimony, however, indicates that the Commonwealth had asked her to testify at Cornish's trial and she responded, "absolutely not." N.T., 5/24/19, at 73.

and died in his car. Similarly, although the Commonwealth witnesses, Officers Miller and Shippen, testified that they saw heavyset McCray in a Grand Marquis in the area, they differed about whether McCray was a driver or a passenger.

[Trial counsel's] strategy was to show that the trial witnesses who identified Cornish as one of the two shooters were lying and intended to frame him. Cornish's witnesses offered only unreliable evidence of an "alternative shooter" that, in the face of the other substantial evidence against Cornish, was not consistent with this strategy. Whether another strategy would have been better than [trial counsel's] is not a question before [the] court. What is required is to determine whether under the circumstances of the case the strategy he chose was reasonable. [The] court finds that it was.

As to the third prong of Cornish's burden, the thin testimony of these witnesses would not have produced a different outcome. [Trial counsel] vigorously and prudently challenged [the] credibility of the eyewitnesses. The contradictory and hesitant statements of Cornish's proposed witnesses could not have produced a different result and, instead, may have diminished the strength of the defense.

PCRA Court Opinion, 10/7/21, at 6-7 (citations and footnote omitted).

Our review of the record supports the PCRA court's conclusions, and Cornish has provided no basis to overturn the court's credibility determinations. ***Todd***, ***supra***; ***Martin***, ***supra***. In this case, the PCRA court was the fact finder at Cornish's trial. As the court explained:

Cornish suggested in his brief that his witnesses, as honest citizens, are more credible than the trial witnesses who were embroiled in drug deals. Judges, juries, and attorneys are schooled in the importance of making credibility determinations on the basis of testimony only. In this, a waiver trial, there is no basis for the proposition that this judge, as trier of fact, was unable to do so.

PCRA Court Opinion, 10/7/21, at 7 n.3.

Moreover, while Cornish takes issue with trial counsel's "standard practice" not to interview eyewitnesses, Cornish's Brief at 37-39, the only issue in this case was whether counsel's failure to call the witnesses identified in his brief prejudiced him. As summarized, above, the PCRA court found no prejudice; contrary to Cornish's claim, the court did not approve "trial counsel's blanket policy 'not interview declarants[.]" *Id.* at 42.

Finally, Cornish suggests that any contradictions in the testimony presented by his PCRA witnesses were "inconsequential," and that there is no record support for the PCRA court's describing the witnesses as "hesitant." *Id.* at 43-44. Once again, we note that we defer to the PCRA court's credibility determinations, and the weight accorded the witnesses' testimony. *Todd*, *supra*; *Martin*, *supra*.

In sum, our review of the record provides ample evidence to support the PCRA court's conclusion that the testimony from the witnesses at the PCRA hearing would not have resulted in a different outcome. Thus, Cornish failed to meet his burden of establishing trial counsel's ineffectiveness. We therefore affirm the PCRA court's order denying him post-conviction relief.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 5/26/2022*